Okay, Morris v. Thompson. You're going to need to pronounce the name for me. I'm not even going to give it a try. My name is Adam Sabren. Sabren? All right. Go right ahead, Mr. Sabren. May it please the Court. Good morning, Your Honors. My name is Adam Sabren, and along with my co-counsels, Blakely Moore and Caitlin Howell, we represent the appellants in this case, Meredith and Jeffrey Morris. Your Honors, appellants, I respectfully request that we reserve five minutes for rebuttal. Yes, you've saved time for rebuttal. So it would be Mr. Moore presenting rebuttal? Rebuttal, yes. All right. That's fine. Your Honors, in this case, we had diversity jurisdiction, and the appellee was not entitled to any form of immunity. As such, the matter should be reversed and remanded back down to the Western District in order to proceed. Basically, the ferries does not apply in State action diversity cases? In this particular State action diversity case, because it was brought against somebody who was in their individual capacity and was not certified by the Attorney General under the amended Federal Torts Claims Act based on the 1988 amendments, the Westfall Acts is what they're referred to. As the First and Ninth Circuits discuss, the Westfall Acts specifically cover these sorts of cases. There's a process by which the individual actor who is not acting with authority, like, for example, is not a commanding officer or the Secretary of the Air Force, that they send their documentation and send all the filings out to the U.S. Attorney General to decide whether or not they're going to certify that person as being in the course and scope of their employment. What do you do with the hold in this case? I'm sorry? What do you do with the case from this Court, hold in this? Hold in this actually took place, was decided prior to the 1988 amendments. And so Congress, and actually in the hold in this case, this Court said, and obviously it's quoted in there, we think that State law claims would apply and would equally be barred by ferries absent action by Congress. But, Your Honors, Congress acted. They acted in 1988 to amend this specifically, and these are mandatory provisions. Again, in the First and Ninth Circuit cases, the courts discuss this and discuss how there's a process. The Attorney General will certify or not certify, and if they do certify that the person is in the course and scope of their employment, then the District Court does a review to confirm it, if requested, and they substitute the United States in. The original defendant is immunized under the Westfall Act, and the United States obviously, in this case, would be immunized under ferries. So Congress has created a statutory solution. Now, there's nothing in the record to indicate that Apelli took advantage of the statutory solution. So instead, he seems to want to get around it by asking for a judicial solution. But Congress has provided a remedy. What's more is these acts in this process actually addresses a lot of the core concerns of ferries, especially the concern about military autonomy, military discipline, or the judicial invasion of this. Congress took that power and put it in the hands of the executive, which is the branch that, quite frankly, is most equipped to evaluate whether or not it would be intrusive. As such, there was a statutory remedy available, and whether the Attorney General refused to certify or it simply wasn't taken advantage of, he didn't act. And so Apelli is attempting to get around it by asking for a judicial remedy. These acts also cover what is obviously the biggest hole in ferries from the Supreme Court perspective, right, because obviously state law claims against an individual actor in their individual capacity has never been addressed by the Supreme Court. They've addressed claims against the government, against people with agency with the government, such as commanding officers. But they haven't addressed people in their individual capacity, the actual tortfeasor, the person who actually committed the act. Nothing was pursued within the military? From the records that we have, no. Nothing was pursued within the military. They didn't know anything? I don't think we have a way of knowing that. But based on the affidavits and evidence and statements from both sides, it appears that no disciplinary action was taken against either party. What's more, this is a 12B1 motion for want of jurisdiction, and jurisdiction was established in this case. Normally, in ferries cases, we have federal question jurisdiction. Subject matter jurisdiction obviously can be established in a number of ways. And we normally have federal question jurisdiction. But here we have diversity jurisdiction. And there has been — I don't think there's any dispute that the parties are still diverse. In fact, Apelli cites in the second paragraph of their brief that the parties are still diverse, as they were at the time of filing. And the amount in controversy is more than $75,000. So in order to — whereas ferries acted to say jurisdiction doesn't exist, here Apelli is asking for us to actually reach out and extinguish jurisdiction that was already there. Are they still both in the military? One, I believe — I believe that Apelli is. Ms. Morris was discharged because she was no longer able to fly due to medical reasons. What's more is courts have also expressed concern that we'd be opening the floodgates to — by allowing these servicemen-to-servicemen suits, that we'd be opening the floodgates to litigation. But this process has been in place since 1988. And, in fact, just recently, you know, the Ninth Circuit has recognized it. The First Circuit has recognized it. And we see it a number of times. Whenever you hear about the government substituting in, this is the process — on a state law claim, this is the process that they use. When the United States substitutes in for a federal employee, and in the statute it specifically says that federal employees include military personnel, when the United States substitutes in for a federal employee, that's the provision in the statute of the Federal Tort Claims Act that they're using. The provisions specify that when a federal employee is served with a lawsuit, they shall — it's not may — shall forward it to the attorney general. And it's a mandatory statutory provision. At that point, obviously, again, the court will — you know, the U.S. can substitute in if the attorney general investigates and determines that the person was in the course and scope of their employment and certifies it to the court. Now, again, that is reviewable by the district court upon request. So there have been cases where it was reviewed and they didn't — the district court refused to certify and refused to substitute in. And the Tenth Circuit case was actually remanded because there was a request for certification. They were certified, but the court below didn't actually enter a ruling or have a hearing on it. So it's a process that's been around for a while. And it's a process that, for one reason or another, it doesn't appear that a penalty availed himself of. And if he was successful, if he had done so and the attorney general determined that he was acting as a military officer in the course and scope of his duties, the United States and the court agreed, the United States would be able to substitute in and Ferries would kick in because then the United States would be the defendant. And obviously, Ferries bars suits against the United States by military personnel arising out of their military duties. So in our opinion, Your Honor, this is — this remedy is what Congress intended, to fill that gap, to deal with those claims. I mean, they spoke. The courts have repeatedly said, Congress, maybe you should revisit this. Maybe you should say something about this. This is very broad. Well, that's what Congress has chosen to do, is to amend it in 1988. And those amendments stand. They're good law. And they've never been overturned or found unconstitutional. The — excuse me. Of course, you know, other concerns that have been eroded over the years somewhat. You know, yes, the uniform system of compensation is available, and Appellee harped on that a bit. But the uniform system of compensation, as the Supreme Court said, was never meant to be exclusive. And so the fact that some medical benefits were available does not preclude recovery in this case. Though, to be fair, we're not even there at this point. This is just a jurisdictional issue on a 12-1 motion. We had the amendments to the Federal Torts Claims Act are very specific and very precise as far as the procedure to be used. In fact, actually, even if the Attorney General had not certified the appellee, he could then ask the court to certify him anyway and have a hearing. So it's actually quite protective of the federal employee. And that's why ferries really shouldn't apply in this specific case. This statute specifically applies to state law claims against all federal employees. And so there's no need to extend ferries' immunity to individual actors. The actual tort fees are sued in their individual capacity. Many of these cases, most of these cases really have to do with that have been cited. Actually, most of the cases that appellee cites to predate the 1988 amendments. And only two of them don't. And that is Filer v. Donley, which was brought against the Secretary of the Air Force, and Shomer, U.S. v. Shomer, which was a Title VII action and therefore was a federal claim, not a state law claim. And neither one of those cases, therefore, apply to this situation. What did the district judge say to the argument that there needed to be a certification? The district judge didn't say anything about certification. He didn't address it. Erase it with him? I don't believe it was raised. This is an issue raised for the first time when? That is correct. No, I'm asking. I may have mumbled. When was this issue you're making first raised that there needed to be a certification? It was the case, well, the case that discusses it. When did you first raise it? When did we first raise it? We first raised it tangentially in front of the court, but I believe it was first raised directly on appeal. In your brief? Through Day and Lutz. I was looking at your briefs just now. I saw a citation to the cases. You don't name Westfall, but there's no need to name the Westfall Act. I'm not even sure you mentioned certification in your brief, do you? No, Your Honor. Sounds like it might be a good argument. Yes, Your Honor. Raised at the right time. Absolutely. All right. What else do you have? Just that, you know, the rationale in Day and Lutz and the process described really are, I mean, they are the remedy. And, of course, this is a jurisdictional issue. Finally, the appellee's contention that the factual attack on jurisdiction, one thing that the Western District failed to address, is that factual attacks on jurisdiction, as opposed to facial attacks, yes, you do have to, the burden does shift to the non-moving party. But even though there's no specific procedures, the Supreme Court has said that it's essentially loosely governed by Rule 56, wherein the appellee isn't required to file, or the responding party is not required to file affidavits. They merely have to point to inadequacies in the filed affidavits or facts and documents already in the record, which is exactly what we did. However, the Western District completely disregarded that and simply stated that we didn't file any kind of affidavits or affirmative evidence, something that is not required. They mechanically applied theories, assuming that that was the correct remedy. And, therefore, Your Honors, we would request and urge you to please send this case in reverse and remand this case back to the Western District for further proceedings. Thank you, Your Honor. All right. Thank you, Mr. Sabren. And your side has saved time for rebuttal. Thank you. Ms. McNiece. May it please the Court. I'm here today proud to be representing Michael Thompson, the appellee. I want to briefly address Westfall because I was very surprised to hear that discussed, and I do not — this is the first time having — that I heard that issue discussed or addressed was at the podium today. There's an assumption there, however, that is mistaken, and that is at the time this lawsuit was filed, my client, the appellee, was no longer a Federal employee. And he is now, again, a reservist, but at the time it was filed, he was not a Federal employee. In addition, there was a prior litigation, litigation a little bit going on at the same time between the appellants where they sued directly the U.S. Government, the United States of America, in Federal court and filed this separate lawsuit in State court. They were going on at the same time except that they had difficulty serving — locating my client and serving him. So, but in all events, I have not briefed Westfall because I didn't recognize that as being an issue in this case. But I can tell you my client was not a Federal employee at the time that this litigation ensued. I want to begin briefly with a discussion of the evidence that's before this Court and was before the trial court and about our factual attack on subject matter jurisdiction. Then I want to address how that evidence compels the dismissal of the cause of action under the Ferris Doctrine. I want to address appellant's assertion that our removal somehow created subject matter jurisdiction independently or superior to the Ferris Doctrine or that it waived it or stopped it. We made a factual attack and we produced evidence. Appellants have argued there's no evidence for the Court to base a finding on. And it's true, appellants produced no evidence. There were no affidavits. There were no documents attached to their response. We attached the affidavit of Michael Thompson. We attached three pleadings of the appellants that once we found out about the suit against the United States of America, we reviewed those pleadings. And there were judicial admissions in those pleadings, and we attached those to our motion to dismiss and asked the Court to take judicial notice of those. Appellants have argued that in a factual attack you do not need to produce, as the Respondent, you do not need to produce any kind of evidence. And this Court in Patterson v. Weinberg said once a factual attack is made, it is up to, in this case, the appellants, to produce affidavits or other evidence that is necessary to satisfy their burden. The evidence in this case established unequivocally that both the appellant, Meredith Morris, and the appellee were on active duty. The incident occurred on base in the 435th Fighter Training Squadron at Randolph Air Force Base. Both of them were attending a roll call military training function. They came directly from their duties in their uniform to the roll call function. Meredith Morris judicially admits that she was ordered to involve Mr. Thompson in this activity by attempting to restrain him with other people. She — it's unequivocal by my client's affidavit he was recuperating from a head injury, that he had been warned any blows to his head could be catastrophic, even fatal, that he was unaware of what was happening. This was not his squadron. He had never experienced anything like this before. Meredith Morris attacked him from the rear. Five or six other officers attacked him from the front. He fell down on top of her and his head slammed the ground. At that point, he began a fight to save his life, all the while screaming many things and probably some of the obscenities in her petition, but certainly screaming, I have a head injury, get off of me. There was an allegation of intoxication. Was that not correct? That is not correct. But, again, that's an allegation. There's no evidence to that effect. And quite candidly, my client, upon reading that, said, why didn't you get an affidavit from me that that was not correct? But that is not correct. The evidence that is before this Court comes from the affidavit of Michael Thompson, and it comes from the appellant's own pleadings. The Texas Supreme Court under Scherer said, The rationale for Ferris is that suits brought by service members for injuries incurred incident to service would necessarily involve the civil judiciary in sensitive military affairs at the expense of both military discipline and military efficiency. In Stencil, the Supreme Court said, We really need to avoid inquiry into military orders, not just the consequences of that. In Stanley, the Supreme Court two years later said, We really — a test that depends on the effect of the inquiry into military matters is not appropriate. We really shouldn't be doing that, because any inquiry into military matters is intrusive and has the potential to impede the discipline and the efficiency of the military. Rather, the Court in Stanley said, We're going to adopt this bright-line incident-to-service test. And I think Judge Southwick in Reagan v. Starcraft Marine, you went through that history, and the — You didn't write it very clearly, but you did understand what Judge Southwick was saying? I understood it very well, Your Honor. Okay. It's very clear that the Fifth Circuit uses a three-factor analysis in terms of that incident-to-service test. First, what is the duty status? Here, that's absolutely undisputed. They were both on duty. They were both — that's clear. The site of the injury is the second factor. Very clearly, no dispute here. They were on base. They literally came from training or work or off an airplane in uniform to this military roll call function. The third is the activity being performed. Appellant Meredith Morris admits this was a military training function. It was designed to build morale. It was designed in my client's affidavit. He discusses they are talking about things that have happened as you were a pilot, things — stories, sharing, building camaraderie, discussing problems. Those three factors are absolutely unequivocally met here. And so we have an injury claimed by Meredith Morris and her husband that is clearly incident-to-service. There's no other way to — we can't get around that. Appellant Morris indicates that she was under a direct order to assault my client. Not assault. She says she was under a direct order to bring him into the training exercise by restraining him with other officers. She indicates he wasn't ordered. Her defense is he wasn't ordered to respond, so he must have been acting outside of his authority. And yet he was fighting for his life at this point. And every member of the service is an asset of the United States government, has a duty to protect himself or herself. You can be court-martialed. I think the court can take judicial notice for becoming too sunburned to report to duty. You can be court-martialed for being too intoxicated to report to duty. Here was a man who knew a blow to my head might kill me, and he fought back. Now, if we step back and say, okay, even though the Supreme Court has said, you know, we really don't think we ought to be looking at how intrusive the questioning of military judgment would be, even if we take a look at that, we would be looking at orders of what was being discussed, why these orders were given. We would clearly be questioning the order of a superior to Meredith Morris. We would be questioning this officer's reaction to that. With regard to State law claims, the appellants have argued that there are jurisdictions which have held this doesn't apply to State law claims. And yet, of course, you questioned him about the Holdenist claim. Actually, when you review the cases cited by appellant, in those cases, they discuss Ferris, and they make a determination that Ferris doesn't apply, and it has to do with incident to service, or sometimes how intrusive is the inquiry going to be into the military. In the Day v. Massachusetts Air National — The Holdenist case, in fact, was that pretty well superseded by the statutory change a year later? Are you talking about the one that was just brought to our attention? Well, that's what Mr. Staben's answer was to the question of whether Holdenist is binding and applicable now. And I don't know the answer to that because the first time I heard of that concept was today. I didn't see it briefed or any reference to it. What I can tell you is, as he elucidated that change in the statute, was that a Federal employee would have to petition the government. In this case, my client was not a Federal employee when he was sued. He was a Federal employee when the action took place. But I would have to review that and brief it. The cases cited by appellants that discuss State court claims, all of them discuss Ferris. Some of them don't apply the doctrine of Ferris because the acting party, the serviceman's conduct, fell so far outside his official authority or what he was supposed to be doing. That's not the case here. We don't have that situation. Also has been addressed the fact that these are soldiers of the same rank. And it is true that this Court has not ruled with regard to soldiers of the same rank in a Ferris claim and whether Ferris applies. I would urge this Court that there is absolutely no distinction between applying Ferris to a superior officer's claim against a superior officer as opposed to two officers of the same rank. In fact, in this case, I think the Court can take perhaps judicial notice, depending on your experience with the military, that my client was on staff in this training squadron. He was a member of the staff. And although he was an officer and the appellant was an officer, she was a student. And so in military jargon, they were not really of same rank in the sense had he — had they not both been married at the time and had they — had they began to date, that would have not been appropriate because he would have been regarded as having a higher rank. But how can you say to anyone, why would you join the military, if you had to say to an enlisted man or a lower-ranking officer? That superior officer ordered me to do something and I did it, but that superior officer cannot be sued. However, I can. That's an absurd result. They're in Puerto Rico, in Perez v. Puerto Rico, which is cited by appellants, as Missouri, and Kennedy v. McGinnis, which is out of Massachusetts. Those cases all allow that there can be no — there's no distinction. If they're the same rank, it's still — the application of Ferris is necessary. I'm going to take a drink of water if I may. Sure. Take your time. That's not a problem. My claritin D is getting the best of me. It is that time of year. That's all right. Yes, it is. I want to address the claim that diversity jurisdiction, in some way, because we invoked diversity jurisdiction and removed this case from state court to federal court, that somehow that created subject matter jurisdiction. We were entitled to remove this case to federal court. There was complete diversity of — complete diversity between the parties, and there was — the appellants pled for damages of a million dollars. That removal doesn't operate to bar our then request, upon thoroughly understanding the facts, to say to that district court, now you need to file the and dismiss these claims. Appellants have argued that we are barred by estoppel. This court noted in Smallwood v. Illinois Central Railroad that you cannot create subject matter jurisdiction by estoppel. In fact, a federal court's first inquiry must be whether the court has subject matter jurisdiction. The Supreme Court held in Arbaugh v. Y&H Corporation that the objection that a federal court lacks subject matter jurisdiction can be raised at any stage of the proceeding, even after trial and even after the entry of a judgment. The Supreme Court ruled in California v. LaRue, no action of the parties can ever confer subject matter jurisdiction upon a federal court. The Supreme Court ruled in American Fire and Casualty v. Finn, estoppel doesn't apply. This court held in Energy Management and Shreveport that subject matter jurisdiction cannot be waived, and it was the duty of the district court, the trial court, it's the duty of this court to decide whether it has jurisdiction before addressing the merits. In conclusion, we believe there was absolutely no basis to claim that any action in removing this case to federal court created jurisdiction where it didn't exist. We would ask the court to affirm the judgment of the trial court in finding that this court does not have, that court did not have subject matter jurisdiction over the claims asserted because they clearly, squarely fall under Ferris under and because of, it's an injury incurred incident to service. If the court has no further questions, I'll give back my time. Thank you, Ms. Nese. Mr. Moore. Can I please record? Blakely Moore for appellants Meredith Morris and her husband, Jeffrey Morris. Appellees are seeking to circumvent a power exclusive to the executive branch as established by Congress. There has been talk that this was not referenced in our brief directly, but I would point the court to our table of authorities where we cite to the Federal Tort Claims Act as a whole, and the Westfall Act, even though we keep referencing it as the Westfall Act, it was an amendment to the Federal Tort Claims Act, and it's actually within the Federal Tort Claims Act under the exclusiveness of remedy. As well, I don't believe it's fair that appellee can claim surprise when are the two main cases that we've presented to this court that we are relying that are post-1988 Westfall amendment provisions, which, if I may, I'm going to refer to it as the Federal Tort Claims Act as amended. There may be some surprise in that neither one of you saw that in those opinions and mentioned it in the briefs. If I may. It's one thing to say Ms. McNeece should have been aware. You should have been aware that this was going to be an issue and should have briefed it for us so that the panel would have been aware. Respectfully, Your Honor, we did not directly state that the Westfall Act precluded their claims, but also that somewhat shifts the burden onto the plaintiff. We are presenting this case as a state claim against an individual actor, whether he be a Federal employee or not, acting in the scope of employment or not. Let me ask you about the certification. It may not be before us, but I see what you're arguing. Is it a jurisdictional point? Absent the certification, does the Westfall Amendment, Westfall Act, take away the authority of the district court to rule or can a party waive seeking a certification and nobody raises it? The case moves on. That's an interesting point, Your Honor. That's where we are. Your Honor, with regards to, I think I can address that in two parts. One, Your Honor, I believe it wouldn't take away the court's diversity jurisdiction because we apply the Federal procedure to the state claim. However, if it's a mandatory burden on the person who wants to claim that immunity to certify it to the Office of the Attorney General, it's not the responsibility of the plaintiff. It's the responsibility of the person seeking to do it. To do what Appelli is asking would be to seek us to present their defense for them to this court. As I said, it is included within the Federal Tort Claims Act as an exclusive remedy. I don't know what would happen if someone failed to do it, if there was some sort of ineffective assistance of counsel where it wasn't raised, if the AG is never notified. I kind of feel, personally, I believe that if you don't raise it, you lose it. However, I think Congress has already spoken to this by putting the power in the executive branch and also applying a remedy within the statute. That certification can happen at any time prior to trial. Your Honor, so to do what Appelli is asking would be seeking to circumvent a power of the executive as granted by Congress. And what's great about the Westfall provisions is it has stemmed the tide of litigation from state claims. It allows the executive branch to take an immediate administrative look at whether or not they want to extend, put the U.S. government in the place of this individual, tortfeasor, to make a determination on whether or not they're acting in the course and scope of their duties. It also allows judicial review for the tortfeasor at the district court level. Should he be denied certification, the tortfeasor could still have the judiciary review that certification process. That is completely absent of the record, that either of those procedures were followed. And so I don't think we can read into it that the Attorney General ever certified him. So our position at this point is he's an individual actor subject to the State of Texas claims that we presented in our original petition against him. To go through a few other things that Appelli mentioned, Congress has specifically addressed the policy issues of floodgates, military autonomy, and uniform system of compensation by putting the power within the executive branch. Again, all of the cases Appelli relies on are prior to 1988. There's a reason for that because the Federal Tort Claims Act, as amended in 1988, cured the State claim, provided a remedy for the State claim issues. And that's why there are no cases cited to by Appelli that occur after 1988, other than Feiler and Schomer, which both dealt with Federal questions on Federal acts. I think Feiler was EEOC, and Schomer was a med mal under the Federal Tort Claims Act. Your Honor, as my time is running out, I would say that there is no Federal claim in this case. This is a State claim absent any sort of immunity challenge that can be extended to him. What Appelli is asking would be extending an equity remedy that Congress has already resolved. We seek reversal and remand back to the District Court for trial on the merits, Your Honor. All right, thank you, Mr. Mullen. And all of today's cases are under submission.